2002 ND 95

**STATE of North Dakota, Plaintiff and Appellee,**

**v.**

**Marvin John LAIB, Defendant and Appellant.**

**No. 20010206.**

Supreme Court of North Dakota.

June 4, 2002.

Ladd Ronald Erickson, Assistant State's Attorney, Mandan, ND, for plaintiff and appellee.

Steven M. Light, Larivee & Light, Grand Forks, ND, for defendant and appellant.

NEUMANN, Justice.

[¶ 1] Marvin John Laib appealed from a criminal judgment entered on a jury verdict finding him guilty of possession of methamphetamine with intent to deliver and possession of stolen property. We conclude the trial court did not err in denying Laib's motion to suppress evidence or in sentencing him as a third-time offender to a 20-year mandatory minimum sentence. We affirm.

I

[¶ 2] During February 2001, law enforcement officers obtained warrants to search Laib's Mandan residence, and structures within the curtilage of the residence, for controlled substances, proceeds from and records of drug transactions, and stolen property. When the first warrant was executed on February 12, 2001, officers seized a red pen containing methamphetamine residue, a small amount of marijuana, an "owe sheet" listing drug transactions, and $2,550 in cash. During this search, one of the officers noticed in the back of a shed on the property a blue welder and welding helmet which were similar to items that had been reported stolen from a Mandan business in January 2001. Officers eventually obtained another search warrant which they executed on February 16, 2001. During this search, the officers seized a blue welder and welding helmet matching the ones recently stolen and about one ounce of methamphetamine concealed in an aluminum beer can in Laib's refrigerator. This evidence led to the issuance and execution of a third search warrant.

[¶ 3] Laib was charged with class A felony possession of a controlled substance, methamphetamine, with intent to deliver in violation of N.D.C.C. § 19–03.1–23, and class C felony possession of stolen property in violation of N.D.C.C. § 12.1–23–02.

Because Laib had two prior convictions for class B felony delivery of a controlled substance, marijuana, in 1983 and in 1993, the State informed Laib it was seeking to impose a 20–year mandatory minimum sentence under N.D.C.C. § 19–03.1–23(1)(a)(2). Laib moved to suppress the evidence obtained during the February 16, 2001 search, claiming the warrant was based upon false information provided to the court by a law enforcement officer. The trial court denied the suppression motion. The jury found Laib guilty on both counts. The trial court concluded the 20–year mandatory minimum sentence under N.D.C.C. § 19–03.1–23(1)(a)(2) for possession of methamphetamine with intent to deliver applied under the circumstances, and sentenced Laib accordingly. The trial court also sentenced Laib to five years imprisonment for possession of stolen property, to be served concurrently with the 20–year sentence. Laib appealed.[1]

## II

[¶ 4] Laib argues the trial court erred in denying his suppression motion because the evidence presented in support of the second search warrant included a false statement by one of the officers that the officer had seen a blue welder and welding helmet during the execution of the first search warrant.

[¶ 5] In *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the United States Supreme Court held:

[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

In this case, the trial court held an evidentiary hearing on Laib's suppression motion. *See State v. Duchene*, 2001 ND 66, ¶ 9, 624 N.W.2d 668.

[¶ 6] During a hearing on the application for the second search warrant, Officer Lonnie Grabowska of the Mandan Police Department testified that on January 26, 2001, a "Millermatic Welder" and a "Speedglas welding helmet" were stolen from a Jemco store, and officers were shown catalog pictures of the stolen items. Officer Grabowska testified that Officer Craig Johnson was one of three officers involved in the February 12, 2001 search of Laib's property. Officer Grabowska testified that, although two of the other officers did not recall seeing a welder during the search, Officer Johnson

stated that he did see a blue welder. The blue welder looked a lot like the picture, and the welding helmet looked a lot like the picture in the shop area of 1400 Second Avenue Southeast. He stated that the welder would be in one of three different places. The north part of the shop. Two, the left—the south part of the shop, which is separated by a wall; or in the attached entryway just to

---

1. Laib has been represented by three different attorneys in these proceedings. The first represented him throughout the trial. The second represented him at the sentencing hearing. The third represented him in this appeal.

the right of the main door as you go into the residence.

The helmet was along the south wall of the workshop or in the back shop there on the north part. The area in that area was cluttered with many different welding articles or welding items around the area.

[¶ 7] In support of the suppression motion, Laib presented an affidavit of Mark Carlson, who claimed he had borrowed the welder from Laib before the police arrived to search the premises on February 12, 2001, and did not return it to Laib until February 14, 2001, making it impossible for Officer Johnson to have observed it during the first search. At the evidentiary hearing on the suppression motion, Carlson testified he loaded the welder into the back of his pickup in the afternoon of February 12, 2001, and that he backed the pickup "all the way up" to the garage to do so. Laib presented the testimony of Dustin Patzner, who said he assisted Carlson that afternoon, but claimed Carlson's pickup was backed "30 feet in front of" the garage door for purposes of loading the welder. Laib also presented the testimony of Russell Ressler, who testified Carlson and Patzner brought the welder to his shop "with the trailer." Officer Johnson testified he observed the welder and welding helmet in Laib's garage, there was snow on the ground, and there were no tire tracks leading to the garage. In denying the suppression motion, the trial court found "the officer's testimony to be truthful, and consistent with the facts as established through all the witnesses."

[¶ 8] Because the trial court has the opportunity to observe and assess the credibility of witnesses, we accord great deference to its decision on a suppression motion. *City of West Fargo v. Ross*, 2001 ND 163, ¶ 5, 634 N.W.2d 527. Whether a defendant establishes statements made in support of a warrant were intentionally false or made with reckless disregard of the truth is a finding of fact. *State v. Schmitt*, 2001 ND 57, ¶ 11, 623 N.W.2d 409. A trial court's decision to deny a motion to suppress will not be reversed if there is sufficient competent evidence capable of supporting the trial court's findings, and if its decision is not contrary to the manifest weight of the evidence. *State v. Heitzmann*, 2001 ND 136, ¶ 8, 632 N.W.2d 1.

[¶ 9] We conclude there is sufficient competent evidence to support the trial court's finding that Officer Johnson was truthful, and the court's decision denying the suppression motion is not contrary to the manifest weight of the evidence.

III

[¶ 10] Laib argues the trial court erred in ruling a 20–year mandatory minimum sentence of imprisonment was applicable under the circumstances.

[¶ 11] On April 28, 1983, Laib pled guilty to class B felony delivery of a controlled substance, marijuana, and was sentenced to two years imprisonment with one year of the sentence suspended. On January 31, 1994, Laib again pled guilty to class B felony delivery of a controlled substance, marijuana, and was sentenced to three years imprisonment with execution of the imprisonment portion of the sentence suspended for a period of three years while Laib served that time on probation. Upon Laib's conviction for class A felony possession of a controlled substance, methamphetamine, with intent to deliver, the trial court ruled a 20–year mandatory minimum sentence was required by N.D.C.C. § 19–03.1–23(1)(a)(2) and (5), which provides:

1. Except as authorized by this chapter, it is unlawful for any person to willfully, as defined in section 12.1–02–02, manufacture, deliver, or pos-

sess with intent to manufacture or deliver, a controlled substance, but any person who violates section 12–46–24 or 12–47–21 may not be prosecuted under this subsection. Any person who violates this subsection with respect to:

a. A controlled substance classified in schedule I or II which is a narcotic drug, or methamphetamine, is guilty of a class A felony and must be sentenced:

. . . .

(2) for a third or subsequent offense, to imprisonment for twenty years.

. . . .

5. A violation of this chapter or a law of another state or the federal government which is equivalent to an offense under this chapter committed while the offender was an adult and which resulted in a plea or finding of guilt must be considered a prior offense under subsections 1, 3, and 4. The prior offense must be alleged in the complaint, information, or indictment. The plea or finding of guilt for the prior offense must have occurred before the date of the commission of the offense or offenses charged in the complaint, information, or indictment.

We have defined the term "offense" for purposes of N.D.C.C. ch. 19–03.1 as meaning "'conduct for which a term of imprisonment or a fine is authorized by statute after conviction.'" *State v. Jones*, 1999 ND 61, ¶ 8, 591 N.W.2d 135 (quoting N.D.C.C. § 12.1–01–04(20)).

[¶ 12] Laib argues the mandatory minimum sentence under N.D.C.C. § 19–03.1–23(1)(a)(2) does not apply in this case because his two prior convictions involved marijuana, which is not a "controlled substance classified in schedule I or II which is a narcotic drug, or methamphetamine." Laib contends, because this is his first conviction for a controlled substance classified as a narcotic drug or methamphetamine, it cannot be considered "a third or subsequent offense" to which the 20–year mandatory minimum sentence applies under N.D.C.C. § 19–03.1–23(1)(a)(2). The State acknowledges that marijuana is not considered a narcotic drug or methamphetamine under state law, but argues the 20–year mandatory minimum sentence applies here because Laib's two prior class B felony marijuana delivery convictions are each "[a] violation of this chapter" which "must be considered a prior offense under subsection[] 1," under the plain meaning of N.D.C.C. § 19–03.1–23(5). The legislative history of these sentencing provisions provides no guidance.

[¶ 13] Construction of a criminal statute is a question of law, fully reviewable by this Court. *State v. Rambousek*, 479 N.W.2d 832, 834 (N.D.1992). Our primary goal in interpreting statutes is to ascertain the Legislature's intentions. *State v. Brossart*, 1997 ND 119, ¶ 14, 565 N.W.2d 752. In ascertaining legislative intent, we first look to the statutory language and give the language its plain, ordinary and commonly understood meaning. *State v. Thill*, 468 N.W.2d 643, 646 (N.D.1991). We interpret statutes to give meaning and effect to every word, phrase, and sentence, and do not adopt a construction which would render part of the statute mere surplusage. *Bruns v. North Dakota Workers Comp. Bureau*, 1999 ND 116, ¶ 16, 595 N.W.2d 298; *Little v. Graff*, 507 N.W.2d 55, 59 (N.D.1993). When a statute's language is ambiguous because it is susceptible to differing but rational meanings, we may consider extrinsic aids, including legislative history, along with the language of the statute, to ascertain the Legislature's intent. *Rambousek*, at 834. We construe ambiguous criminal statutes against the government and in favor of the

defendant. *State v. Rubey,* 2000 ND 119, ¶ 16, 611 N.W.2d 888; *Brossart,* at ¶ 14; *State v. Larson,* 479 N.W.2d 472, 473 (N.D. 1992). We also construe criminal statutes to avoid ludicrous and absurd results. *Rubey,* at ¶ 16.

[¶ 14] Construing the statute as a whole, we see no ambiguity. Section 19–03.1–23(1)(a)(2), N.D.C.C., requires a person who violates the section with respect to a schedule I or II narcotic drug or methamphetamine to be imprisoned for 20 years "[f]or a third or subsequent offense." If this were the extent of the statutory directive, we might agree with Laib that the statute is ambiguous and should be construed in his favor because it is unclear whether only the present offense must involve a schedule I or II narcotic drug or methamphetamine, or whether the prior offenses must also involve a schedule I or II narcotic drug or methamphetamine for the mandatory minimum sentence to apply. However, N.D.C.C. § 19–03.1–23(5) clears up any possible ambiguity by specifying, "[a] violation of this chapter ... must be considered a prior offense under subsection[] 1." Laib's two prior convictions for class B felony delivery of marijuana clearly qualify as prior violations of N.D.C.C. ch. 19–03.1, and under the plain meaning of the statute, he is subject to the mandatory minimum 20–year sentence of imprisonment.

[¶ 15] Laib's proposed construction of the statute would require that we ignore the plain meaning of the language, "violation of this chapter," in N.D.C.C. § 19–03.1–23(5). Although Laib argues his construction is supported by the rule of lenity, which requires ambiguous criminal statutes to be construed in a defendant's favor, the rule of lenity " 'serves as an aid for resolving an ambiguity; it is not to be used to beget one.' " *United States v. Valencia–Andrade,* 72 F.3d 770, 775 (9th Cir.1995) (quoting *Callanan v. United*

*States,* 364 U.S. 587, 596, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961)). It is impossible to give a sensible construction to the phrase, "violation of this chapter," and conclude this language somehow contemplates only prior offenses involving a schedule I or II narcotic drug or methamphetamine.

[¶ 16] Moreover, several courts interpreting somewhat similar, although not identical, sentencing provisions under other versions of the Uniform Controlled Substances Act, have construed prior offense provisions in a like fashion. *See, e.g., Thomas v. Davis,* 192 F.3d 445, 455–56 (4th Cir.1999) (holding general statutory definition of subsequent offense as one predicated on at least two previous convictions of any state or federal statute relating to a broad range of controlled substances allowed use of prior convictions for possessing with intent to distribute and distributing less than 10 pounds of marijuana to enhance penalty for current conviction of trafficking in more than 10 pounds of marijuana to 25 year sentence despite defendant's argument that penalty for trafficking in more than 10 pounds of marijuana should be treated as a self-contained provision; under defendant's construction, general statutory definition of subsequent offense would be rendered superfluous and the penalty for a third or subsequent offense would rarely apply); *United States v. Karam,* 37 F.3d 1280, 1289 (8th Cir.1994) (holding prior felony conviction for using a communication facility to facilitate the intentional and unlawful importation of controlled substances was, under the plain language of the statute, an "offense that is a felony under any provision of this subchapter" requiring imposition of 20–year mandatory minimum sentence for current convictions of aiding and abetting the distribution of heroin and conspiracy to distribute heroin); *Commonwealth v. Churchwell,* 938 S.W.2d 586, 587–88 (Ky.Ct.App.1996) (holding for purposes

of enhancing sentence for trafficking in marijuana, general definition of second or subsequent offense as being one which occurs after any prior conviction under chapter or any other state or federal law relating to controlled substances required that no distinction be made between prior convictions for trafficking in marijuana and prior convictions for trafficking in other illegal drugs); *Thomas v. State,* 319 S.C. 471, 465 S.E.2d 350, 352 (1995) (holding the "legislature could not have intended second or subsequent offenses under [statute] to include only the offense of marijuana trafficking when there is a specific statute which defines second or subsequent offenses as any drug offense"); *State v. Flynn,* 675 S.W.2d 494, 498–99 (Tenn. Crim.App.1984) (holding plain meaning of enhancement provision which applied to prior convictions under any statute relating to the sale or distribution of narcotic or hallucinogenic drugs or marijuana required rejection of defendant's argument that his Schedule I(LSD) sentence should not have been enhanced because he had never before been convicted of selling a drug in that schedule, but had only prior drug convictions involving marijuana).

[¶ 17] Laib argues the Legislature could not have intended that any violation of N.D.C.C. ch. 19–03.1 qualifies as a prior offense to trigger the mandatory minimum sentence. However, that is what the Legislature has said in the clearest of terms, and we cannot say its decision leads to a ludicrous or absurd result. If our construction is not what the Legislature intended, the Legislature is able to revisit its mandatory minimum sentencing scheme. We conclude the trial court did not err in ruling a 20–year mandatory minimum sentence applied to Laib's conviction under the circumstances.

### IV

[¶ 18] The criminal judgment is affirmed.

[¶ 19]GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER and DALE V. SANDSTROM, JJ., concur.